# UNITED STATES DISTRICT COURT

### for the

Middle District of North Carolina ▾

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>A residence located at 330 Mountain View Dr.<br>Kernersville, NC 27284 | )<br>)<br>)<br>)<br>)<br>) |

Case No. 1:25MJ56

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A

located in the _____ Middle _____ District of _____ North Carolina _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 922(a)(6) | False statements in connection with the purchase of a firearm |
| 18 U.S.C. §§ 371 | Conspiracy to defraud the United States |

The application is based on these facts:

See Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of \_\_\_\_\_ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

TREVOR MAYES   Digitally signed by TREVOR MAYES
Date: 2025.02.25 10:38:03 -05'00'

*Applicant's signature*

Trevor Mayes, Special Agent

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
*email submission and telephone affirmation.* *(specify reliable electronic means).*

Date: 2/25/2025

*Judge's signature*

City and state: Winston-Salem, North Carolina       Joi Elizabeth Peake, U.S. Magistrate Judge

*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

IN THE MATTER OF THE SEARCH OF:
a residence located at 330 Mountain View Dr.
Kernersville, NC 27284

Case No. 1:25MJ56

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Trevor Mayes, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.     This affidavit is submitted in support of a search warrant for the following premises, further described in Attachment A:

   a.   A residence located at 330 Mountain View Drive, Kernersville, North Carolina 27284 (the "Subject Residence"), including any detached garage, the residence of Lonnie Gray VOGT.

   b.   The Subject Residence includes any outbuildings or appurtenances, and the following vehicle if present at the residence at the time of execution: 2002 Pontiac Montana Van, with North Carolina license plate HD0206M, and VIN 1GMDX03E62D147922.

2.     I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") and have been so employed since April of 2023.  I am a graduate of the Federal Law Enforcement Training Center Uniformed Police Training Program, Criminal Investigator Training Program, as well as the ATF National Academy, where I received extensive training in the investigation of firearms, controlled substances, arson, and explosives offenses.

3. Prior to my career with ATF, I was employed as a Police Officer with the Pentagon Force Protection Agency since 2020. Within that role, I enforced laws according to the Code of Federal Regulations and the Virginia State Code. While working for PFPA, I made arrests, collected and preserved evidence, conducted suspect and witness interviews, and more. I have a Bachelor of Science Degree in Homeland Security from East Coast Polytechnic Institute Virginia Beach, VA.

4. During my career with ATF, I have conducted and participated in case investigations involving violations of the Gun Control Act and the National Firearms Act. Those violations include firearms possession by prohibited persons, straw purchasing, unlicensed dealing of firearms, trafficking of firearms, machinegun manufacturing, etc. In furtherance of these investigations, I have utilized multiple investigative techniques including but not limited to physical and electronic surveillance, controlled purchases of evidence, management of confidential informants, examination of electronic evidence, and the seizure of electronically stored communications. I have experience and/or training on monitoring and gathering information received from pen register and/or trap and trace device, real time GPS and geo-location information, and historical call detail records. I have participated in the execution of search warrants authorizing the seizure of evidence in criminal investigations. Through this experience, I have been able to successfully gather criminal intelligence and utilize this information in furtherance of ongoing criminal investigations.

5. The facts set forth in this affidavit are based upon my personal knowledge of this investigation, conversations with law enforcement officers and other individuals who have personal knowledge of the events and circumstances described herein, review of reports,

2

documents, and recordings created by others, as well as information that I gained through training and experience.

6. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

7. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. §§ 922(a)(6) [false statements in connection with the purchase of a firearm] and 371 [conspiracy to defraud the United States] have been committed by Margaret Angela WALL (W/F, DOB 08/02/1974, SSN XXX-XX-8964) and Lonnie Gray VOGT (W/M, DOB 11/18/1951, SSN XXX-XX-0884). There is also probable cause to search the property described in Attachment A for evidence of these crimes further described in Attachment B.

## RELEVANT LEGAL FRAMEWORK

8. The ATF regulates the firearm industry. As part of that, the ATF issues licenses to business and individuals authorizing them to sell firearms for profit. Pursuant to 18 U.S.C. § 923, only a Federal Firearms Licensee ("FFL") is permitted to sell firearms as a business.

9. ATF Form 4473 (Firearms Transaction Record) requires a purchaser to provide several pieces of information in order to lawfully buy a firearm from an FFL. Among them, the purchaser must provide their name and address. At question 11(a) on the Form 4473, the purchaser must sign their name to certify that they are the "actual" buyer of the firearm. Form 4473 contains a warning that reads: "You are not the actual transferee/buyer if you are acquiring the firearms(s) on behalf of another person."

10. Pursuant to 18 U.S.C. § 922(a)(6), it is unlawful for any person "in connection with the acquisition or attempted acquisition of any firearm or ammunition" from an FFL or other

3

legitimate firearms dealer to knowingly make "any false or fictitious oral or written statement or to furnish or exhibit any false, fictitious, or misrepresented identification, intended or likely to deceive" the firearm seller "with respect to any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition[.]" In other words, it is a crime to lie about a material fact on the Form 4473.

11. When a purchaser is buying a firearm for another person, but falsely certifies on the Form 4473 that he or she is purchasing the firearm for himself or herself, the practice is commonly referred to as "straw purchasing."

## JURISDICTION

12. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Middle District of North Carolina is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).]

## PROBABLE CAUSE

13. On or about January 6, 2025, I was assigned an investigation on Margaret WALL ("WALL") that originated from a lead generated by the Charlotte IV Crime Gun Intelligence Center. According to the lead, Industry Operations Investigator ("IOI") Joshua Saghy was conducting a pre-inspection of Colfax Guns and Ammo, an FFL, located at 9420 West Market Street, Colfax, North Carolina ("NC"), when he noticed suspicious activity.

14. IOI Saghy noticed that Margaret WALL had purchased over fifty (50) firearms from various FFLs in the Greensboro area. It was discovered that there are several "Report of Multiple Sale or Other Disposition of Pistols and Revolvers" (ATF Form 3310.4) for WALL. A multiple sale is defined as the purchase of two or more handguns (or one handgun and one long

4

gun) in a single transaction, or during five consecutive business days. According to an employee of Colfax Gun and Ammo, WALL had previously stated that she purchases the firearms for her father; however, according to an online obituary, WALL's father has been deceased since 2005.

15. Sales receipts indicate that WALL has spent over $10,000 on firearms, despite WALL's wage report from the NC Department of Employment Service showing WALL made less than $8,000 in 2023 while working for Quality Home Staffing Inc. The wage report shows WALL is still employed by the same company and is projected to earn about the same in 2024. A search of a law enforcement database shows that WALL resides with Jacques Pettit SR, located at 1927 Fleming Road, Greensboro, NC, 27410. Mr. Pettit's wage report shows that he also previously worked at Quality Home Staffing Inc.

16. I conducted a search of the National Tracing Center database (eTrace) and discovered that WALL has sixteen (16) multiple firearm sales, totaling forty-six (46) firearms. I also reviewed WALL's ATF Form 4473's from Colfax Gun and Ammo, and one firearm pawn ticket from West Mountain Pawn, an FFL in Kernersville, NC. Upon reviewing said information, I identified more firearm purchases, bringing the total known number of firearms purchased by WALL to approximately sixty-three (63). At the time, all of WALL's firearms were purchased from March 2024 to December 2024. Furthermore, I reviewed several sales receipts from Colfax Gun and Ammo and learned that most firearms purchased by WALL cost around $200-$300, and that WALL usually pays with cash. Additionally, several of the firearms are of the same make and caliber (see Wall's Firearm Purchases chart below).

17. On or about January 8, 2025, I identified a Facebook account for WALL. WALL indicated on her profile that her father passed away in 2005. On the same day, I spoke to IOI Saghy to see if he had any additional information about WALL. According to IOI Saghy, one of the FFL

owners at Colfax Gun and Ammo, told him that WALL stated that that she purchased the guns for her father, "Lonnie." I later identified Lonnie as Lonnie Gray VOGT ("VOGT") who resides at Subject Residence. Additionally, the FFL told IOI Saghy that sometimes VOGT goes with WALL when she purchases firearms, and that on at least one occasion, VOGT may have directed WALL on what firearm to purchase.

18.     Through my training and experience, I know it is common for a straw purchaser to buy many firearms of the same make, model, and caliber. Straw purchasers typically receive cash from the person for which they are buying the firearms. Often, the recipients of straw purchased firearms are present during the firearms transactions. It is common for prohibited persons who cannot legally purchase firearms to obtain firearms through straw purchases. Additionally, it is generally known that law enforcement can trace firearms back to the original purchaser. With that said, persons who are not prohibited but intend to use a firearm in a criminal offense sometimes obtain firearms through straw purchases as a way of not being identified by law enforcement.

19.     With WALL's firearm purchase activity and public comments, amongst other things, I developed reasonable suspicion that WALL may be conducting straw purchases for VOGT, or that WALL and VOGT may be engaged in another type of illegal firearm scheme.

20.     On January 10, 2025, I called LuxFirearms, located at 806 F HWY 66 South, Kernersville, NC 27284. I informed the manager, Jason Stevens, that I would like to come in and talk to him about an individual that has purchased some firearms from his store. When I arrived at LuxFirearms. I spoke to Melissa Flynt, an employee that manages the records and ATF forms. I informed Melissa that I was trying to gather more information about WALL's firearm purchases.

21.     Melissa said WALL frequently purchases firearms and is always with an "older man named Lonnie" who WALL says is her father. Melissa said they do not have a lot of frequent

6

customers that buy the number of firearms as WALL. Melissa further said that VOGT has called the store on occasion and that the name that comes up on the caller ID is "Lonnie Vogler."

22.     Melissa's statements were further corroborated by another employee of LuxFirearms, David Houser. David said he believed WALL and VOGT arrive to the store together in a van. David then showed me the Facebook profile of Colfax Pawn and Ammo, with a posted picture of VOGT (see below).



23.     I also spoke to the store manager, Jason. Jason confirmed that VOGT is always with WALL when she purchases firearms. Jason stated that VOGT will usually call the store to see what firearms are on sale and would frequently try to negotiate for the cheapest price. Jason explained that after VOGT calls to inquire about firearms, VOGT will arrive at the store with

WALL. Jason further stated that they usually look at a firearm together, and then VOGT asks WALL if that is the firearm she wants, in a suggestive way, as if directing WALL on which gun to buy. Jason also said WALL would pay for the firearm[s].

24.     Melissa checked the store's system and identified that WALL purchased a total of twenty (20) firearms from May 16, 2024, to November 26, 2024.

25.     Later that day, I searched several law enforcement databases but was unable to find a positive match for the name "Lonnie Ray Vogler." On January 13, 2024, I accessed the ATF National Instant Criminal Background Check System (NICS) Referral Application (ANR). ANR is a system that allows ATF investigators to see if an individual was ever denied a firearm transaction due to a prohibiting factor. I searched for firearm transaction denials that occurred in the ATF Charlotte Field Division area with the first name "Lonnie" and the last name beginning with "V".

26.     The ANR search revealed two separate denials for VOGT. The first one (NTN # 102WRYD8S) occurred during an attempted handgun purchase on April 9, 2023, at West Mountain Pawn, an FFL located at 214 West Mountain Street, Kernersville, NC 27284. The second denial (NTN # 10346YPMK) occurred during an attempted handgun purchase on November 30, 2023, also at West Mountain Pawn. WALL purchased at least four (4) firearms from that same FFL as early as March 2024. Furthermore, West Mountain Pawn is approximately 0.9 miles from Subject Residence.

27.     Further review of the said firearm transaction denials revealed that VOGT was denied due to 18 USC 922 (g)(4) - Adjudicated Mental Defective. VOGT was entered into the

8

NICS Index on March 19, 2016, by Originating Agency Identifier (ORI) DCVA02000. That ORI belongs to the Department of Veterans Affairs (VA).

28.     I searched the NC law enforcement database for VOGT and found that VOGT lives at Subject Residence. The DMV picture associated with VOGT appears to be the same person from the picture posted on Colfax Gun and Ammo's Facebook profile. According to DMV information, a 2002 Pontiac Montana van, with North Carolina license plate HD0206M, and VIN 1GMDX03E62D147922, is registered to VOGT.



29.     On or about January 14, 2025, I went to LuxFirearms, to retrieve copies of WALL's ATF Form 4473's. While there, I spoke with a former LuxFirearms employee, Tori Hedgecock. Tori said that while employed with LuxFirearms, she filled out one of WALL's 4473's. Tori said

Case 1:25-mj-00056-JEP     Document 1     Filed 02/25/25     Page 10 of 22

she WALL, told her Lonnie's last name was VOGT. I showed Tori VOGT's DMV picture, and she confirmed it was VOGT.

30. On the same day, I went to West Mountain Pawn, and spoke to one of the managers, Zach. Zach explained that VOGT was denied a firearm transaction and that he specifically remembered VOGT because VOGT collects guitars and sold about 15 guitars to the store. Zach further explained, that after he was denied a firearm, VOGT went back to West Mountain Pawn to try to purchase another firearm. According to Zach, VOGT claimed that he got everything resolved with the ATF regarding his earlier denial, but he was unable to provide any documentation to that effect.

31. Zach further explained that WALL purchased firearms from his store after VOGT's firearm transaction denials; however, VOGT was not with WALL for those purchases. Zach remembered VOGT referring to WALL either as his daughter and/or his nurse. Zach stated that on one occasion, VOGT called the store to inquire about a Glock that was for sale and claimed that his daughter was interested in buying it. Zach said that he suspected that WALL was straw purchasing firearms for VOGT so he banned WALL from the store. Zach searched WALL's name in the store's system, which showed WALL purchased a total of four (4) firearms. Zach also said that his business partner, Scott, had previously been to VOGT's house and had seen VOGT with a firearm.

32. On January 15, 2025, I spoke to Scott on the phone. Scott explained that VOGT used to come into the store to sell guitars, and that he was usually with his nurse, WALL. I asked Scott if he has ever seen firearms at VOGT's house, to which Scott replied, "not really."

33. On February 10, 2025, I reach out to WALL's supervisor, Ms. Joy. Ms. Joy called WALL on a 3-way call with me. I explained to WALL that I would like to meet in person to ask

some questions about her firearms purchases. WALL agreed to meet in Kernersville, NC, after 4:00pm on February 12, 2025.

34. On February 12, 2025, at approximately 1:45pm, I called WALL to see if she was still available to speak with me. WALL said that she was available at 4:15pm. WALL told me that she wanted to meet in the parking lot at the Lowes Foods, located at 240 Market View Drive, Kernersville, NC 27284. At approximately 4:15pm, Special Agent (SA) Jacob Hudson and I met WALL in the parking lot of Lowes Foods. WALL agreed to speak with me in my vehicle. WALL sat in the front passenger seat, I sat in the driver's seat, and SA Hudson sat in the backseat. The doors remained unlocked. The following is a synopsis of the interview.

35. I began the interview by asking WALL about where she lived and about her employment. WALL said she used to live in Greensboro, but moved in with her aunt in King, NC. WALL said she works part time as an in-home health aide. WALL explained that she has one patient, VOGT, and that VOGT is a veteran. WALL said she sees VOGT four times per week (Mondays, Wednesdays, Thursdays, and Fridays) from 12:00pm to 4:00pm.

36. I asked WALL about her firearm purchases. WALL claimed she bought approximately thirty (30) firearms, and that she is a collector. WALL stated her aunt does not like firearms, so WALL stores them in safes at her friend Jacques's house. While she was explaining

11

this, I noticed that her voice was shaky, as if she was very nervous. I asked WALL if Jacques would be willing to allow me to look at her firearms. WALL replied no.

37. I then asked WALL to estimate how much money she spent on firearms in total. WALL estimated that she spent $1,000 to $3,000 on firearms but said she does not know how much she has spent in total.

38. I informed WALL that I believed she was lying. WALL admitted that the firearms she bought were all down the street at VOGT's house. When I asked why the firearms were at VOGT's house, WALL said it was because she had nowhere else to store them. WALL then said VOGT provided her with the money to buy the firearms and claimed they all belonged to her.

39. I confronted WALL about not telling the full truth. WALL changed her statement again and said that she bought the firearms for VOGT. WALL said she bought them for VOGT because VOGT is unable to read or write. WALL claimed she does not make money or get anything out of buying the firearms for VOGT. When asked why she does it, WALL replied "I don't know, I guess I'm dumb."

40. I asked WALL if she knew VOGT had a fiduciary who manages his money. WALL said that she believed Sheila, VOGT's oldest daughter, was his fiduciary. I asked WALL if she knew if the VA told VOGT he could not purchase firearms, and WALL claimed she did not.

41. I talked to WALL about West Mountain Pawn and how she was banned by the manager due to the suspicion of straw purchasing for VOGT. WALL said that she and VOGT just stopped going there and she did not know that she was banned from the business.

42. I asked WALL about the firearms purchases at Colfax Gun and Ammo. WALL said that she normally deals with the owner. WALL said Colfax Gun and Ammo knows that VOGT

cannot fill out the paperwork (ATF Form 4473) because VOGT cannot read or write. WALL further stated that Colfax Gun and Ammo was fine with her filling out the paperwork.

43. I asked WALL to explain how the firearm transactions occurred. WALL said that VOGT would usually call the firearm stores to see what was on sale. After that, WALL would drive VOGT to the store using his van. WALL explained that they went into the store together to look at the firearms. WALL said that VOGT would tell her which firearms to buy. As far as payment, WALL said VOGT would either give her the money before entering the store or while they were inside the store. WALL said that VOGT would sometimes pay for the firearms himself.

44. WALL said she and VOGT stopped going to LuxFirearms because they treated VOGT badly. When asked to elaborate, WALL said VOGT, "purchased a firearm and they wouldn't come down on the price." WALL further said VOGT did not like the way he was treated so he called the owner and told him he would not be back. I asked WALL if VOGT bought the firearm, to which WALL said "mmhm" and shook her head up and down in agreement. I then asked if VOGT filled out the paperwork. WALL took and long pause, began to say something, then said "I can't remember, honestly." WALL said the employee they dealt with was Jason, and that the sale occurred approximately two weeks ago.SA Hudson asked WALL if she was getting any type of compensation from VOGT. WALL claimed that she does not and that she only does it because VOGT asked her to do it. SA Hudson asked WALL what VOGT does with the firearms. At first WALL said VOGT might be selling them to his "buddies." WALL then said that on approximately 5-8 transactions, she drove VOGT in his van so he could sell firearms to his friend,

Gilley. WALL further stated the firearms transactions always occur at Gilley's lawnmower business in Summerfield, NC.

45.     WALL stated that when she started working for VOGT, there was a safe in his house that had at least two firearms in it. WALL later said there are now four safes at VOGT's house full of firearms.

46.     A few times during our conversation, either I or SA Hudson informed WALL that she was not in trouble but that we would have to discuss the matter with the U.S. Attorney's Office who would make the ultimate decision about what if any charges would be brought. Before the interview concluded, I served WALL with a Warning Notice of Straw Purchasing. WALL agreed that she would not reveal to VOGT that there is an ongoing investigation.

47.     On February 13, 2025, I received a phone call from Ms. Joy, WALL's supervisor at Quality Home Staffing. Ms. Joy informed me that WALL told her that VOGT has firearms in his house and that WALL no longer felt comfortable working for VOGT. WALL who was in the room with Ms. Joy, spoke up and said that she told VOGT the ATF talked to her. WALL said VOGT asked for our names and "grilled" her because he wanted to know exactly what we asked her. During the conversation WALL mentioned that VOGT has Post Traumatic Stress Disorder.

48.     On February 15, 2025, WALL called me to ask if she needed to turn in two firearms. WALL explained that VOGT previously gave her money to purchase a pistol for her birthday. WALL also said that VOGT previously gave her money to buy a pistol for her aunt, as a gift.

WALL confirmed that she filled out the ATF Form 4473's and both firearms were intended as gifts.

49. On February 17, 2025, Ms. Joy told me that WALL informed her her cousin had previously purchased a firearm from VOGT as a gift for WALL's aunt.

## WALL'S FIREARM PURCHASES

| Purchase Date | FFL | Make Model | Caliber | Type |
|---|---|---|---|---|
| 3/15/2024 | West Mountain Pawn | Sccy, Model CPX-2 | 9 | Pistol |
| 3/15/2024 | West Mountain Pawn | S&W, Model SD40VE | 40 | Pistol |
| 3/15/2024 | West Mountain Pawn | Taurus, Model G2C | 9 | Pistol |
| 4/2/2024 | Kens Gunsmith Shop | Ruger, Model LCP | 380 | Pistol |
| 4/2/2024 | Kens Gunsmith Shop | S&W, Model SD9 | 9 | Pistol |
| 4/8/2024 | West Mountain Pawn | Rock Island Armory, M206 | 0.38SPL | Revolver |
| 4/30/2024 | Colfax Gun and Pawn | Girsan, Model MC 28 | 9 | Pistol |
| 4/30/2024 | Colfax Gun and Pawn | Keltec, Model P15 | 9 | Pistol |
| 5/2/2024 | Colfax Gun and Pawn | GFORCE, Model GF25 | 12GA | Shotgun |
| 5/3/2024 | Colfax Gun and Pawn | Citadel, Model TRAKR | 22LR | Rifle |
| 5/3/2024 | Colfax Gun and Pawn | Springfield, Model 234 | 22LR | Rifle |
| 5/16/2024 | Colfax Gun and Pawn | Howa, Model Tracker | 22MAG | Rifle |
| 5/16/2024 | LuxFirearms | Diamondback, Model DB15 | 5.56 | Rifle |
| 5/22/2024 | Colfax Gun and Pawn | S&W, Model M&P 9 Shield | 9 | Pistol |
| 5/22/2024 | Colfax Gun and Pawn | S&W, Model M&P 9 | 9 | Pistol |
| 5/24/2024 | Colfax Gun and Pawn | Savage, Model 64 | 22 | Rifle |
| 5/31/2024 | Colfax Gun and Pawn | HiPoint, Model 995 | 9 | Rifle |
| 5/31/2024 | Colfax Gun and Pawn | Taurus, Model TH9C | 9 | Pistol |
| 6/5/2024 | Colfax Gun and Pawn | HiPoint, Model 4595 | 45 | Rifle |
| 6/10/2024 | LuxFirearms | Diamondback, Model DB380 | 380 | Pistol |
| 6/19/2024 | Colfax Gun and Pawn | Keltec, Model P17 | 22LR | Pistol |
| 6/25/2024 | Colfax Gun and Pawn | Ruger, Model LCP | 0.380 | Pistol |
| 6/25/2024 | Colfax Gun and Pawn | Keltec, Model P17 | 22 | Pistol |
| 6/25/2024 | Colfax Gun and Pawn | Keltec, Model P17 | 22 | Pistol |
| 6/25/2024 | Colfax Gun and Pawn | Keltec, Model PMR-30 | 22 | Pistol |
| 6/25/2024 | Colfax Gun and Pawn | Tisas, Model 1911 Duty | 45 | Pistol |
| 6/25/2024 | Colfax Gun and Pawn | Keltec, Model P17 | 22 | Pistol |
| 7/1/2024 | LuxFirearms | Canik, Model TP9SA | 9 | Pistol |
| 7/8/2024 | Academy Sports | Ruger, Model LCP | 380 | Pistol |
| 7/8/2024 | Academy Sports | Ruger. Model LCP | 380 | Pistol |
| 7/9/2024 | Colfax Gun and Pawn | Keltec, Model P-17 | 22 | Pistol |

| Date | Dealer | Make/Model | Caliber | Type |
|---|---|---|---|---|
| 7/9/2024 | Colfax Gun and Pawn | GFORCE, Model GF25 | 410GA | Shotgun |
| 7/11/2024 | Colfax Gun and Pawn | Taurus, Model G3C | 40 | Pistol |
| 7/31/2024 | Colfax Gun and Pawn | Keltec, Model P17 | 22 | Pistol |
| 8/1/2024 | LuxFirearms | Glock, Model 23 | 40 | Pistol |
| 8/5/2024 | LuxFirearms | S&W, Model M&P 22C | 22 | Pistol |
| 9/4/2024 | LuxFirearms | Mossberg, Model 715T | 22 | Rifle |
| 9/4/2024 | LuxFirearms | Mossburg, Model 702 | 22 | Rifle |
| 9/4/2024 | LuxFirearms | Rossi, Model S41118 | 410 | Shotgun |
| 9/6/2024 | LuxFirearms | Springfield Armory, Model XD | 45 | Pistol |
| 9/10/2024 | Colfax Gun and Pawn | Walther, Model PPS | 9 | Pistol |
| 9/25/2024 | Colfax Gun and Pawn | Taurus, Model TX22 | 22 | Pistol |
| 10/2/2024 | LuxFirearms | Hatfield, Model SAS | 12GA | Shotgun |
| 10/3/2024 | Shannock's Pawn | S&W, Model Bodyguard | 380 | Pistol |
| 10/3/2024 | Shannock's Pawn | Keltec, Model PF-9 | 9 | Pistol |
| 10/3/2024 | Colfax Gun and Pawn | Sig Sauer, Model P290RS | 380 | Pistol |
| 10/4/2024 | Colfax Gun and Pawn | Keltec, Model P17 | 22 | Pistol |
| 10/4/2024 | Colfax Gun and Pawn | Keltec, Model P17 | 22 | Pistol |
| 10/9/2024 | LuxFirearms | Sig Sauer, Model P320C | 9 | Pistol |
| 10/9/2024 | LuxFirearms | Beretta USA, Model Px4 Storm | 9 | Pistol |
| 10/28/2024 | LuxFirearms | Mossberg, Model Patriot | 6.5 | Rifle |
| 10/28/2024 | LuxFirearms | Winchesterm Model 1890 | 22 | Rifle |
| 10/28/2024 | LuxFirearms | Glock, Model 23 | 40 | Pistol |
| 10/28/2024 | LuxFirearms | Armscor of the Phillipines (Squires Bingham), Model XTM-22 | 22 | Pistol |
| 10/28/2024 | LuxFirearms | S&W, Model 1 | 22 | Revolver |
| 11/1/2024 | Colfax Gun and Pawn | Sarsilmaz (Sar Arms), Model SAR 9 | 9 | Pistol |
| 11/6/2024 | Colfax Gun and Pawn | Taurus, Model The Judge | 45/410 | Revolver |
| 11/11/2024 | LuxFirearms | Sig Sauer, Model P320C | 9 | Pistol |
| 11/19/2024 | Colfax Gun and Pawn | Polymer 80, Model PFC9 | 9 | Pistol |
| 11/19/2024 | Colfax Gun and Pawn | Ruger, Model LCP Max | 380 | Pistol |
| 11/22/2024 | Colfax Gun and Pawn | Keltec, Model P17 | 22 | Pistol |
| 11/22/2024 | Colfax Gun and Pawn | Keltec, Model P17 | 22 | Pistol |
| 11/26/2024 | LuxFirearms | Ruger, Model LCP | 380 | Pistol |
| 11/26/2024 | LuxFirearms | Stoeger Arms, Model Luger | 22 | Pistol |
| 11/26/2024 | LuxFirearms | Walther, Model PPS M2 | 9 | Pistol |
| 11/26/2024 | Colfax Gun and Pawn | Taurus, Model TX22 Compact | 22 | Pistol |
| 11/26/2024 | Colfax Gun and Pawn | Keltec, Model P17 | 22 | Pistol |
| 11/26/2024 | Colfax Gun and Pawn | Keltec, Model SU-16 | 5.56 | Rifle |
| 11/29/2024 | Colfax Gun and Pawn | Savage, Model 410 | 410/22 | Shotgun |
| 11/29/2024 | Colfax Gun and Pawn | Anderson, Model AM-15 | 5.56 | Rifle |
| 11/29/2024 | Colfax Gun and Pawn | North American Arms, Model NAA22 | 22 | Revolver |

16

| 11/29/2024 | Colfax Gun and Pawn | North American Arms, Model NAA22 | 22 | Revolver |
|---|---|---|---|---|
| 12/3/2024 | Colfax Gun and Pawn | Keltec, Model Sub-2000 | 9 | Pistol |
| 12/18/2024 | Colfax Gun and Pawn | Tisas, Model PX-5.7 | 57 | Pistol |
| 12/18/2024 | Colfax Gun and Pawn | Taurus, Model PT22 | 22 | Pistol |
| 1/21/2025 | Colfax Gun and Pawn | Not yet verified | | |
| 1/31/2025 | Colfax Gun and Pawn | Not yet verified | | |
| 1/31/2025 | LuxFirearms | Not yet verified | | |
| 1/31/2025 | LuxFirearms | Not yet verified | | |

## CONCLUSION

50.     Based on the foregoing, there is probable cause to believe between March 2024 and January 2025, WALL and VOGT did unlawfully and knowingly make false and fictitious oral and written statements intended to deceive Federal Firearms Licensees, with respect to a fact material to the lawfulness of the sale of such firearms in violations of Title 18, U.S.C. §§ 922(a)(6) [false statements in connection with the purchase of a firearm] and 371 [conspiracy to defraud the United States]. Specifically, to include stating that WALL was the "actual" purchaser of the firearms when in reality, VOGT was purchasing the firearms.

51.     Based on these facts, I submit there is probable cause to believe that violations of 18 U.S.C. §§ 922(a)(6) [false statements in connection with the purchase of a firearm] and 371 [conspiracy to defraud the United States] have been committed by Margaret WALL and Lonnie VOGT. Furthermore, I submit there is probable cause to believe that evidence related to the above violations are currently stored at VOGT's residence, located at 330 Mountain View Drive, Kernersville, North Carolina 27284 (Subject Residence). I also submit there is probable cause that evidence related to the above violations are currently stored in VOGT's primary vehicle, which he

is the registered owner. VOGT's vehicle is a 2002 Pontiac Montana van, with North Carolina license plate HD0206M, and VIN 1GMDX03E62D147922.

52.   Based on the foregoing, I submit there is probable cause to search the Subject Residence as described in Attachment A for evidence, instrumentalities, contraband, and/or fruits of these crimes further described in Attachment B.

Respectfully submitted,

**TREVOR MAYES** Digitally signed by TREVOR MAYES
Date: 2025.02.25 10:26:28 -05'00'

Trevor Mayes
Special Agent
Bureau of Alcohol, Tobacco, Firearms and
Explosives (ATF)

Dated: February 25, 2025

Pursuant to Rule 4.1 of the Federal Rule of Criminal Procedure, the affiant appeared before me via reliable electronic means (telephone), was placed under oath, and attested to the contents of this written affidavit.

Honorable Joi Elizabeth Peake
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Property to Be Searched

#### 330 Mountain View Dr., Kernersville, North Carolina 27284

The Subject Residence is a residential address located at 330 Mountain View Dr., Kernersville, North Carolina 27284, within the Middle District of North Carolina. The residence is a single-story structure with tan-colored vinyl siding, with black shutters along the windows and a black shingled roof. The residence has a front porch with a metal wheelchair ramp leading from the driveway up to the front porch. The numbers "330" are displayed on the mailbox. The Subject Residence includes any outbuildings or appurtenances, and the following vehicle if present at the residence at the time of execution: 2002 Pontiac Montana Van, with North Carolina license plate HD0206M, and VIN 1GMDX03E62D147922.



19



## ATTACHMENT B

## Particular Things to be Seized

The following materials, which constitute evidence of the commission of a criminal offense, contraband, the fruits of crime, or property designed or intended for use or which is or has been used as the means of committing a criminal offense, namely, violations of 18 U.S.C. §§ 922(a)(6) [false statements in connection with the purchase of a firearm] in the form of the following:

1. Firearms or ammunition;

2. Documents or items demonstrating the purchase of firearms, ammunition, and items associated with the use and storage of firearms;

3. Packaging materials, both used and unused, for firearms, ammunition, and related accessories such as magazines or storage cases;

4. Records, receipts, notes, ledgers and other papers relating to the transportation, storage, and/or purchase of firearms, ammunition and related accessories;

5. Photographs, including still photos, negatives, video tapes, films, of firearms and/or ammunition; and

6. Indicia of ownership or control of the Subject Residence or the 2002 Pontiac Montana Van, with North Carolina license plate HD0206M and VIN 1GMDX03E62D147922, including but not limited to papers, traffic tickets, receipts, and personal belongings.